```
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
SHIVA STEIN,                                  :
                                              :
                    Plaintiff,                :   16 Civ. 2487 (KPF)
                                              :
         - against –                          :
                                              :   **NOTICE OF PENDENCY OF**
                                              :   **DERIVATIVE ACTION,**
JOHN R. FRIEDERY, *et al.*,                   :   **PROPOSED SETTLEMENT,**
                                              :   **AND SETTLEMENT HEARING**
                    Defendant.                :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

TO:   ALL RECORD OR BENEFICIAL OWNERS OF COMMON STOCK OF FLOWSERVE CORPORATION.

A federal court authorized this Notice.  This is not a solicitation from a lawyer.

THIS NOTICE AFFECTS YOUR LEGAL RIGHTS. PLEASE READ IT CAREFULLY.
YOU MAY WISH TO CONSULT YOUR ATTORNEY CONCERNING THIS NOTICE.
NO CLAIM IS BEING MADE AGAINST YOU.

### SETTLEMENT SUMMARY

Plaintiff Shiva Stein, acting derivatively on behalf of Flowserve Corporation ("Flowserve"), has reached a proposed settlement (the "Settlement") in the above-entitled shareholder derivative action (the "Action").  On November 28, 2016, The Honorable Katherine Polk Failla, District Judge of the United States District Court for the Southern District of New York (the "Court") preliminarily approved the proposed Settlement and ordered that this Notice be  provided to Flowserve's shareholders.  Unless otherwise defined herein, all capitalized terms have the same meanings as set forth in the Stipulation.

**The Action**:   The Settlement resolves a direct and a shareholder's derivative action brought on behalf of Flowserve over:  (1) whether statements made in Flowserve's 2015 Proxy Statement regarding Flowserve's cash-based and equity-based incentive compensation plans were materially false or omitted material information in violation of § 14(a) of the Securities Exchange Act; and (2) whether Flowserve's directors granting of awards in 2015 and 2016 under Flowserve's equity-based compensation plans and its Annual Incentive Plan amounted to a breach of fiduciary duty and/or a violation of § 14(a).  See Question 2 below for more information.

**The Terms of the Settlement**:       The Individual Defendants, acting as Flowserve's board of directors, will pass resolutions regarding the Flowserve 2007 Annual Incentive Plan (the

"AIP"), the Flowserve 2007 Long-Term Incentive Plan (the "LTIP"), and the Flowserve Equity and Incentive Compensation Plan (the "EICP") to approve, clarify, confirm, and ratify that the AIP and the LTIP are two compensation plans that are adopted under, and have the same expiration date as, the EICP, but which are maintained separate from the EICP and pursuant to which Annual Incentive Awards and Long-Term Incentive Awards (as each such term is defined in the EICP) may be made under and pursuant to the terms of the EICP.  All Defendants further agreed to the addition of certain disclosures in the CD&A section of Flowserve's 2017, 2018, and 2019 annual meeting proxy statements.  In addition, all Defendants further agreed to the addition of certain disclosures in all proxy statements issued prior to December 31, 2019 proposing to reapprove or amend the EICP or approve a substantially similar substitute plan, to the extent such disclosure, in the reasonable view of management, remains relevant to such plan.  See Question 5 below for more information.

**Attorneys' Fees, Costs, and Expenses**: Plaintiff's Counsel, Barrack, Rodos & Bacine, has litigated this Action on a contingent basis and has conducted this Action and advanced the costs and expenses of the Action with the expectation that, if they were successful in obtaining a recovery that benefits Flowserve, they would receive fees and be reimbursed for their costs and expenses by Flowserve, as is customary in this type of litigation.  Plaintiff's Counsel will apply to the Court for an award of attorneys' fees, and for reimbursement of costs and expenses, from Flowserve in a total maximum amount of $560,000.

**Deadline**: If you wish to comment on and/or object to the Settlement, you must file and serve written comments and/or objections by no later than January 20, 2017.  See Question 8 below for more information.

**Court Hearing on Fairness of Settlement**: February 9, 2017.  See Question 10 below for more information.

**Contact for More Information**: Plaintiff's Counsel A. Arnold Gershon, Barrack, Rodos & Bacine, Eleven Times Square, 640 Eighth Avenue, 10th Floor, New York, NY 10036 (212) 688-0782.

### THE CIRCUMSTANCES OF THE SETTLEMENT

The Complaint in this Action was filed on April 4, 2016.  On May 23, 2016, the Defendants filed with the Court a pre-motion letter seeking dismissal of all claims in the Complaint based on several grounds, including Plaintiff's failure to make a pre-suit demand upon Flowserve, and that the Complaint failed to state any claims against the Defendants because, among other things, Plaintiff lacked standing to assert certain claims, there were no actionable misrepresentations or omissions, Plaintiff had not suffered any economic loss, and Plaintiff's claims were time-barred.  On May 26, 2016, the Plaintiff filed her opposition to Defendants' pre-motion letter.  A hearing on Defendants' pre-motion letter was initially scheduled for June 15, 2016.

This Action involves numerous complex legal and factual issues.  Flowserve denies each and all claims and contentions of wrongdoing asserted directly against it in this Action.  The

Individual Defendants each deny each and all claims and contentions of wrongdoing with respect to the specific claims asserted against him or her in this Action. Defendants have mounted a vigorous defense, and will continue to do so if this Action is not settled.

After the filing of Defendants' pre-motion letter, the Plaintiff and Defendants began active negotiations in an effort to resolve the Action by settlement. Following further negotiations, two adjournments of the pre-motion hearing, and an exchange of documents and information, on or about August 17, 2016, the Plaintiff and Defendants reached an agreement in principle to settle the Action.

Plaintiff and Plaintiff's Counsel agreed to this Settlement because they believe that it is in the best interests of Flowserve and its shareholders. Specifically, they believe that the Settlement is fair, reasonable, and adequate, given the significant risk that no recovery will be achieved if this Action is litigated to conclusion and the likelihood that, even if this Action were to end with a final judgment in favor of Flowserve, that probably would not occur for several years, following a trial and subsequent appeal.

Defendants agreed to this Settlement without admitting any liability, because doing so will avoid the uncertainty, risks, costs, and burdens inherent in any litigation, especially in complex cases such as this Action.

## YOUR LEGAL RIGHTS IN THIS SETTLEMENT

This action is a derivative action asserting claims on behalf of Flowserve. No payments will be made to shareholders, and there is no requirement that you respond to this Notice. Flowserve shareholders do, however, have the right to comment on and/or object to the Settlement and/or the application for an award of attorneys' fees and to otherwise be heard. Flowserve shareholders also have the right to attend the hearing on the Settlement in the Court in New York, NY on February 9, 2017.

These rights and options – **and the deadlines to exercise them** – are explained in this Notice below.

**BASIC INFORMATION**

1. **Why Did I Receive This Notice?**
2. **What Is This Lawsuit About?**
3. **What Has Happened In This Lawsuit?**
4. **Why Is There A Settlement?**
5. **What Benefits Does The Settlement Provide?**
6. **What Rights Do Flowserve And Its Shareholders Give Up In The Settlement?**
7. **How Will Plaintiff's Counsel Be Paid?**
8. **How Do I Comment On And/Or Object To The Settlement?**
9. **What Happens If The Settlement Is Not Approved?**
10. **When And Where Will The Court Hold A Hearing On Whether To Approve The Settlement?**

**11.     Do I Have To Come To The Hearing?**
**12.     May I Speak At The Hearing?**
**13.     What Happens If I Do Nothing At All?**
**14.     Are There More Details About The Settlement?**

**1.     Why Did I Receive This Notice?**

You, or someone in your family, may be a shareholder of Flowserve. This Notice explains the Action, the Settlement, and your rights with respect to the Settlement.

**2.     What Is This Lawsuit About?**

On April 4, 2016, Plaintiff Shiva Stein, a shareholder in Flowserve, filed a complaint (the "Complaint") in the federal Court in New York, NY, against John R. Friedery, William C. Rusnack, Lynn L. Elsenhans, Joe E. Harlan, David E. Roberts, Mark A. Blinn, Leif E. Darner, Gayla J. Delly, Roger L. Fix, Rick J. Mills, Charles M. Rampacek (collectively the "Individual Defendants"), all of whom are or were directors and/or officers of Flowserve. Plaintiff also named Flowserve as a defendant. The Individual Defendants, together with Flowserve, are the "Defendants."

The Complaint asserted both direct and shareholder derivative claims. As to the derivative claims, the Complaint asserted claims for breach of fiduciary duty against the Individual Defendants derivatively on behalf of Flowserve. The Complaint alleged, among other things, that (1) statements made in Flowserve's proxy statement for the May 21, 2015 Annual Meeting of Shareholders (the "2015 Proxy Statement") regarding Flowserve's cash-based and equity-based incentive compensation plans were materially false or omitted material information in violation of § 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a) and the applicable rules and regulations promulgated thereunder; and (2) that Flowserve's directors breached their fiduciary duties and/or violated § 14(a) by granting awards to directors and certain executive officers in 2015 and 2016 under Flowserve's equity-based compensation plans and its Annual Incentive Plan because those plans had expired or were never effective.

The Complaint sought new disclosures and a new shareholder votes on Flowserve's equity and incentive compensation plan (the "EICP"), an order terminating the EICP, an accounting and disgorgement, and a judgment for damages on behalf of Flowserve against the Individual Defendants, an order rescinding the 2015 and 2016 awards under Flowserve's compensation plans, and an award of costs to the Plaintiff including her attorneys' fees and costs and expenses.

**3.     What Has Happened In This Lawsuit?**

On May 23, 2016, the Defendants filed with the Court a pre-motion letter seeking dismissal of all claims in the Complaint based on several grounds, including Plaintiff's failure to make a pre-suit demand upon Flowserve, and that the Complaint failed to state any claims against the Defendants because, among other things, Plaintiff lacked standing to assert certain

4

claims, there were no actionable misrepresentations or omissions, Plaintiff had not suffered any economic loss, and Plaintiff's claims were time-barred. On May 26, 2016, the Plaintiff filed her opposition to Defendants' pre-motion letter. A hearing on Defendants' pre-motion letter was initially scheduled for June 15, 2016.

After the filing of Defendants' pre-motion letter, the Parties began active negotiations in an effort to resolve the Action by settlement. Following further negotiations, two adjournments of the pre-motion hearing, and an exchange of documents and information, on or about August 17, 2016, the Parties reached an agreement in principle to settle the Action.

On or about August 17, 2016, that agreement was memorialized in a Memorandum of Understanding ("MOU"), pursuant to which the Parties agreed prepare this Stipulation, which is to be submitted to the Court within 60 days after execution of the MOU for the Court's approval. Plaintiff acknowledged and agreed that the execution of the MOU by the Defendants was and is not an admission on the part of any of the Defendants that they have in any way committed or attempted to commit any violation of law or breach of fiduciary duty, including a breach of any duty to Flowserve or its shareholders, or otherwise acted in any wrongful manner. Defendants acknowledge and agree that the execution of the MOU by Plaintiff is not an admission on the part of the Plaintiff that the Complaint lacks merit, is not sufficient, or otherwise does not assert viable and triable claims as alleged.

As of October 28, 2016, Plaintiff and Defendants entered into a formal Stipulation of Settlement (the "Stipulation") that governs the Settlement. Flowserve denies each and all claims and contentions of wrongdoing asserted directly against it in this Action. The Individual Defendants each deny each and all claims and contentions of wrongdoing with respect to the specific claims asserted against him or her in this Action.

**4.    Why Is There A Settlement?**

Plaintiff, Flowserve, and the Individual Defendants entered into the Stipulation after taking into account (1) the benefits to be conferred upon Flowserve and its shareholders as a result of the Settlement, (2) the uncertainty, risks, burdens, and costs of continued litigation, (3) the desirability of consummating the Settlement as provided by the terms of the Stipulation, and (4) their conclusion that the terms and conditions of the Settlement are fair, reasonable, adequate, and in the best interests of Flowserve and Flowserve's shareholders.

**5.    What Benefits Does The Settlement Provide?**

Defendants have agreed to the following three things:

(a)    The Individual Defendants, acting as Flowserve's board of directors, will pass resolutions regarding the AIP, the LTIP, and the EICP to approve, clarify, confirm, and ratify that the AIP and the LTIP are two compensation plans that are adopted under, and have the same expiration date as, the EICP, but which are maintained separate from the EICP and pursuant to which Annual Incentive Awards and Long-Term Incentive Awards (as each such term is defined in the EICP) may be made under and pursuant to the terms of the EICP.

5

(b)     All Defendants agree that in the 2017, 2018, and 2019 annual meeting proxy statements the compensation discussion and analysis will contain the following disclosures:

(1)     Within the "Elements of the Executive Compensation Program – Overview" subsection of the CD&A:

"The Flowserve Corporation Equity and Incentive Compensation Plan (EICP) is our shareholder-approved equity and cash compensation plan that allows Flowserve to provide equity compensation in compliance with any applicable shareholder-approval requirements of the New York Stock Exchange.  In addition, the shareholder-approved performance criteria in the EICP allow us to provide equity and cash compensation that may be tax-deductible under IRC 162(m) to our Named Executive Officers.

In 2009, shareholders approved the EICP, and the Company reserved 8,700,000 shares of common stock (as adjusted for the Company's three-for-one forward stock split effected on June 21, 2013) for distribution.  In 2015, shareholders re-approved the performance criteria under the EICP to allow Flowserve to continue to provide compensation that may be tax-deductible for purposes of Section 162(m) of the IRC.

The Annual Incentive Plan (AIP) and the Long-Term Incentive Plan (LTIP) are two Board-approved Flowserve compensation plans that are adopted under, and have the same expiration date as, the EICP, but which are maintained separate from the EICP.  Awards granted under the AIP and LTIP that are intended to comply with the requirements of IRC 162(m) must use one or more of the EICP's shareholder-approved performance criteria, and are dependent on fulfilling such performance criteria.  In addition, equity awards provided under the LTIP are subject to the limitations of the EICP including the 8,700,000 shares of common stock that are reserved for distribution under the EICP.  The Board most recently reviewed and approved the AIP and the LTIP on [_____ __, 20__]."

(2)     In the "Tax and Accounting Implications of Executive Compensation" subsection of the CD&A:

"The AIP and the LTIP were adopted under, and have the same expiration date as, the EICP, which was most recently approved by shareholders for Section 162(m) purposes at the 2015 annual meeting of shareholders. Performance-based compensation under both the AIP and the LTIP that is subject to the requirements of IRC 162(m) is expected to be deductible for tax purposes because such compensation is dependent on fulfilling performance criteria approved by shareholders under the EICP."

(c)     For all proxy statements – whether annual or special – issued prior to December 31, 2019 proposing to reapprove or amend the EICP or approve a substantially similar substitute plan, the proposal shall disclose, to the extent such disclosure below, in the reasonable view of management, remains relevant to such plan, as follows:

"The Flowserve Corporation Equity and Incentive Compensation Plan (EICP) [or substitute plan] is our shareholder-approved equity and cash compensation plan that allows Flowserve to provide equity compensation in compliance with any applicable shareholder-approval requirements of the New York Stock Exchange. In addition, the shareholder-approved performance criteria in the EICP allow us to provide equity and cash compensation that may be tax-deductible under IRC 162(m) to our Named Executive Officers. Flowserve maintains two Board-approved plans – the Annual Incentive Plan (AIP) and the Long-Term Incentive Plan (LTIP) – that are adopted under, and have the same expiration date as, the EICP [or substitute plan]. Awards granted under the AIP and LTIP that are intended to comply with the requirements of IRC 162(m) must use one or more of the EICP's [or substitute plan's] shareholder-approved performance criteria, and are dependent on fulfilling such performance criteria. In addition, equity awards provided under the LTIP are subject to the limitations of the EICP [or substitute plan].

As of the [record date], approximately [____] employees and [__] directors were eligible for awards under the EICP [or substitute plan]."

## 6. What Rights Do Flowserve And Its Shareholders Give Up In The Settlement?

If the Settlement is finally approved by the Court, the Court will enter a final judgment that provides for dismissal of the Action with prejudice, for a release of claims by Plaintiff, Flowserve, and its shareholders, and for an injunction barring Plaintiff, Flowserve, and its shareholders from pursuing any of the Released Claims. Specifically, the final judgment will:

(a) Adjudge (i) that Defendants and each and all of their respective present or former predecessors, successors, parents, subsidiaries, affiliates, insurers, attorneys, officers, directors, employees, and agents (the "Defendant Releasing Parties") shall conclusively be deemed to have fully, finally and forever released, relinquished and discharged, and covenanted not to sue on the Plaintiff Released Claims, except for claims relating to the enforcement of the Settlement; and (ii) that Flowserve, Plaintiff (individually and derivatively on behalf of Flowserve), and any other Flowserve shareholder (derivatively on behalf of Flowserve), and each and all of their respective present or former predecessors, successors, parents, subsidiaries, affiliates, insurers, attorneys, officers, directors, employees and agents (the "Plaintiff Releasing Parties") shall conclusively be deemed to have fully, finally and forever released, relinquished and discharged, and covenanted not to sue on the Defendant Released Claims, except for claims relating to the enforcement of the Settlement. Notwithstanding anything contained herein to the contrary, including Paragraph 4.5(i) and 4.5(ii) of the Stipulation, the releases set forth herein shall not affect the rights of any of the Defendants to coverage under any insurance policies or indemnification under any indemnity rights, obligations or arrangements any of the Defendants may have with Flowserve.

"Defendant Released Claims" means and includes any and all known claims and Unknown Claims for damages, injunctive relief, or any other remedies against any or all of the

Defendants, or any or all of their respective predecessors, successors, parents, subsidiaries, affiliates, insurers, attorneys, officers, directors, employees, and agents (together the "Defendant Released Persons") that have been or could have been asserted by Plaintiff or Flowserve directly or by any shareholder of Flowserve derivatively on behalf of Flowserve that are based upon, arising from, or related to any of the facts, events, occurrences, or circumstances that have been alleged in the Complaint, or that relate to any of the subject matters of the Action, including without limitation claims relating to Flowserve's Annual Incentive Plan, Long-Term Incentive Plan, Equity and Incentive Compensation Plan, 2015 Proxy Statement and Flowserve's previous proxy statements and other disclosures relating to such plans, the awards granted or compensation paid pursuant to such plans, the tax positions taken by Flowserve with respect to such awards or compensation, the processes followed and steps taken by Defendants to issue equity or equity-based awards prior to the date hereof, the validity of the issuance of any such cash, equity, cash-based or equity-based awards, and Defendants' documentation of such processes and steps.

"Plaintiff Released Claims" means and includes any and all known claims and Unknown Claims for damages, injunctive relief, or any other remedies against Plaintiff, or against her attorneys, respective predecessors, successors, parents, subsidiaries, affiliates and agents (together the "Plaintiff Released Persons"), that are based upon, arising from, or related to any of the facts, events, occurrences, circumstances, or subject matters of the Action or that were or could have been asserted in the Action.

"Unknown Claims" means any Released Claims that the Releasing Persons do not know or suspect to exist at the time of the Released Claims, including those which, if known, might have affected the decision to enter into or object to the Settlement. Unknown Claims include those Released Claims in which some or all of the facts comprising the claim may be suspected or unsuspected, concealed or undisclosed, or which may now exist or in the future come into existence. With respect to any and all Released Claims, the Releasing Persons stipulate and agree that the Releasing Persons have, expressly or by operation of the Judgment or law, waived and relinquished the provisions, rights, and benefits conferred by or under California Civil Code §1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Releasing Persons shall have, expressly or by operation of the Judgment or law, waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542. The Releasing Persons acknowledge, expressly or by operation of law, that the foregoing waiver was separately bargained for and an essential term of the Settlement of which this release is a part.

"Releasing Persons" means the Plaintiff Releasing Parties and the Defendant Releasing Parties, as defined above.

(b)     Bar and permanently enjoin (i) the Defendant Releasing Parties from instituting, asserting, or prosecuting, either directly, representatively, or in any other capacity, any of the Plaintiff Released Claims; and (ii) the Plaintiff Releasing Parties from instituting, asserting, or prosecuting, either directly, representatively, or in any other capacity, any of the Defendant Released Claims.

(c)     Adjudge that the Stipulation, the Settlement, and the Judgment shall not constitute or be construed as a presumption, concession, admission, or inference by Plaintiff that the Complaint lacks merit, or by Flowserve or any of the Individual Defendants of the existence, adequacy, or merit of any breach of duty, liability, fault, or wrongdoing as to any facts or claims alleged in the Action, or that Plaintiff, Flowserve, or any other shareholders of Flowserve have suffered any damages, and provide that none of them, nor any of the negotiations, transactions, or proceedings in connection with the Settlement, shall be deemed, invoked, offered, or received into evidence in any civil, criminal, or administrative action or other proceeding of any nature whatsoever, except as may be necessary to enforce or effectuate the Stipulation and the Judgment.

**7.     How Will Plaintiff's Counsel Be Paid?**

Plaintiff's Counsel will be paid by Flowserve [and/or its insurers] for their attorneys' fees, and for reimbursement of their costs and expenses, in such amounts as the Court awards them, up to the total maximum amount of $560,000. At least 28 days before the Settlement Hearing, Plaintiff's Counsel will file with the Court a brief in support of the Settlement and an application for an award of attorneys' fees, and for reimbursement of costs and expenses, which amount shall not exceed $560,000 in total (the "Fee and Expense Petition"). Plaintiff's Counsel expressly waives any right to seek or collect any amount exceeding $560,000 in total. The amount awarded by the Court and paid by Flowserve and/or its insurers will be the only payment to Plaintiff's Counsel for their efforts in achieving the Settlement.

**8.     How Do I Comment On And/Or Object To The Settlement?**

If you are a Flowserve shareholder, you can comment on and/or object to all or any part of the Settlement or the Fee and Expense Petition. To comment on and/or object to the Settlement, you must send a letter or other writing stating your comments and/or objections to each of the following, in an envelope sent via first class United States mail, and postmarked by no later than __January__ 20, 2017. You must include your name, address, telephone number, signature, and information regarding when you owned Flowserve stock, and how many shares of stock you owned. Send your comments and/or objections to each of:

9

| **DISTRICT COURT** | **PLAINTIFF'S COUNSEL** | **DEFENDANTS' COUNSEL** |
|---|---|---|
| Clerk of the Court<br>United States District Court<br>Southern District of New York<br>Daniel Patrick Moynihan<br>United States Courthouse<br>500 Pearl Street<br>New York, NY 10007 | A. Arnold Gershon<br>Barrack, Rodos & Bacine<br>Eleven Times Square<br>640 Eighth Avenue<br>10th Floor<br>New York, NY 10036 | Jay B. Kasner<br>Susan L. Saltzstein<br>Skadden, Arps, Slate,<br>Meagher & Flom LLP<br>Four Times Square<br>New York, NY 10036 |

9. **What Happens If The Settlement Is Not Approved?**

If the Settlement is not approved, then the Stipulation would be terminated, Plaintiff and Defendants would revert to their respective statuses prior to negotiation of the Settlement, and the Action would continue as if there never had been the proposed Settlement.

10. **When And Where Will The Court Hold A Hearing On Whether To Approve The Settlement?**

A hearing will be held before The Honorable Katherine Polk Failla on February 9, 2017 at 1:00 p.m. at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY 10007 (the "Settlement Hearing"), for the purpose of finally determining: (a) whether the Settlement is fair, reasonable and adequate to Flowserve and its shareholders, and should be finally approved by the Court; (b) whether a final judgment should be entered dismissing the Action with prejudice, releasing claims as described in Question 6 above, and enjoining Flowserve and its shareholders from pursuing the Released Claims; and (c) whether to approve the Fee and Expense Petition.

11. **Do I Have To Come To The Hearing?**

No. But you are welcome to come to the hearing at your own expense. If you send written comments and/or objections, as described in Question 6 above, you do not have to come to the hearing to talk about them. As long as you have sent a comment and/or objection on time, the Court will consider it. You may also hire your own lawyer to attend the hearing, but this is not required.

12. **May I Speak At The Hearing?**

You may ask the Court for permission to speak at the hearing. To do so, you must send a letter stating your intention to appear, via first class United States mail postmarked by no later than February 3, 2017, to the District Court, Plaintiff's Counsel, and Defendants' Counsel, at the addresses listed in Question 8 above.

**13.     What Happens If I Do Nothing At All?**

You will lose your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants or certain other persons relating to the claims that are being released in the final judgment, as described in the response to Question 6.

**14.     Are There More Details About The Settlement?**

This Notice summarizes the proposed Settlement. More details are in the Stipulation, which is posted on Flowserve's website at http://www.flowserve.com, and available for review or download. You may also contact Plaintiff's Counsel, A. Arnold Gershon, Barrack, Rodos & Bacine, Eleven Times Square, 640 Eighth Avenue, 10th Floor, New York, NY 10036 (212) 688-0782, if you have any questions.

**PLEASE DO NOT CONTACT THE COURT**.

DATED:     November 30, 2016
           New York, NY

ENTERED BY ORDER OF THE COURT

_____
HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE