UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| SHIVA STEIN, | : | CIVIL ACTION NO. |
| | : | 16-CV-2487-KPF |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN R. FRIEDERY, WILLIAM C. RUSNACK, | : | **PLAINTIFF'S MEMORANDUM** |
| LYNN L. ELSENHANS, JOE E. HARLAN, | : | **OF LAW IN SUPPORT OF** |
| DAVID E. ROBERTS, MARK A. BLINN, LEIF | : | **MOTION FOR FINAL** |
| E. DARNER, GAYLA J. DELLY, ROGER L. FIX, | : | **APPROVAL OF SETTLEMENT** |
| RICK J. MILLS, CHARLES M. RAMPACEK, | : | |
| FLOWSERVE CORPORATION, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**BARRACK, RODOS & BACINE**
A. Arnold Gershon
Michael A. Toomey
Eleven Times Square
640 Eighth Avenue, 10th Floor
New York, NY 10036
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

**BARRACK, RODOS & BACINE**
Daniel E. Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Fax: (215) 963-0838

# TABLE OF CONTENTS

STATEMENT OF FACTS ........................................................................................................ 1

ARGUMENT ........................................................................................................................ 7

    I.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ................ 7

          A.    The Proposed Settlement Is Procedurally Fair because It Is the Result of Good Faith, Arm's Length Negotiations ...................................................... 9

          B.    The Proposed Settlement Is Substantively Fair, As It Falls within the Range of Reasonableness and Merits Final Approval ................................... 10

               1.    The Benefits of This Settlement Are Excellent In Light of the Potential Recovery at Trial, the Risks Posed by Continued Litigation and the Likely Duration and Cost of Continued Litigation ................................................................................................ 11

               2.    Reaction of the Shareholders to the Settlement ...................................... 16

               3.    The Parties Have Sufficient Information to Agree to this Settlement ................................................................................................ 17

    II.    PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE ............................................................................................... 18

          A.    The Request for Fees Is Reasonable under the Percentage of Recovery Method ............................................................................................... 20

          B.    The Request for Fees Is Reasonable under the Lodestar Method .................. 22

CONCLUSION ..................................................................................................................... 23

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                       <u>Page(s)</u>

*Arace v. Thompson*,
   No. 08 Civ. 7905 (DC), 2011 WL 3627716 (S.D.N.Y. Aug. 17, 2011) ................................... 16

*Bader v. Blankfein*,
   356 Fed. Appx. 471 (2d Cir. 2009) ..................................................................................... 15

*Bansbach v. Zinn*,
   1 N.Y.3d 1, 801 N.E.2d 395 (2003) ................................................................................... 22

*Benoit v. Hammonds*,
   No. 07 Civ. 561 (GMS), (Scheduling Order in Connection with Derivative Settlement, dated
   Aug. 13, 2009) ............................................................................................................... 17

*Bosch v. Meeker Coop. Light & Power Ass'n*,
   257 Minn. 362, 101 N.W. 423 (1960)) ................................................................................ 19

*Carson v. American Brands, Inc.*,
   450 U.S. 79 (1981) ............................................................................................................ 8

*Castagna v. Madison Square Garden, L.P.*,
   No. 09 Civ. 10211 (LTS), 2011 WL 2208614 (S.D.N.Y. June 7, 2011) ................................. 18

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ........................................................................................ 10, 17

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1997) ........................................................................................... 8

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ............................................................................................... 17

*Fielding v. Allen*,
   99 F. Supp. 137 (S.D.N.Y. 1951) ....................................................................................... 9

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir. 2000)) ........................................................................................ 19, 20

*Goodman v. Futrovsky*,
   213 A.2d 899 (Del. 1965) ................................................................................................ 13

*Greenspan v. Bogan*,
   492 F.2d 375 (1st Cir. 1974) .............................................................................................. 8

*In re AOL Time Warner S'holder Derivative Litig.*,
   No. 02 Civ. 6302, 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ..................................... passim

*In re Fab Universal Corp. Sh. Deriv. Litig.*,
   148 F. Supp. 3d 277 (S.D.N.Y. 2015) (citation omitted)..................................................... 7, 22

*In re Global Crossing Sec. & ERISA Lit.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................... 11, 16, 22

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litig.*,
   2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ............................................................ 19, 20, 21, 22

*In re Omnicom Group, Inc. Sh. Deriv. Lit.*,
   43 A.D. 3d 766 (N.Y.A.D. 1ˢᵗ Dept. 2007) ............................................................................ 15

*In re Pfizer Inc. S'holder Derivative Litig.*,
   780 F. Supp. 2d 336 (S.D.N.Y. 2011)..................................................................................... 21

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)...................................................................................... 9

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2003)) ..................................................................................... 19

*In re Warner Communications Sec. Litig.*,
   798 F.2d 35 (2d. Cir. 1986).................................................................................................... 8

*In re WorldCom, Inc. Sec. Lit.*,
   2005 WL 591189 (S.D.N.Y. March 14, 2005) ................................................................. 8, 22

*Kaplan v. Rand*,
   192 F.3d 60 (2d Cir. 1999)..................................................................................................... 18

*Klein ex rel. SICOR, Inc. v. Salvi*,
   No. 02 Civ. 1862 (AKH), 2004 WL 596109 (S.D.N.Y. Mar. 30, 2004) ................................ 17

*Klein v. Salvi*,
   115 F. App'x 515 (2d Cir. 2004) ........................................................................................... 17

*Marx v. Akers*,
   88 N.Y.2d 189 (1996) ........................................................................................................... 15

*Mathes v. Roberts*,
   85 F.R.D. 710 (S.D.N.Y. 1980) .............................................................................................. 8

*McReynolds v. Richards-Cantave,*
    588 F.3d 790 (2d Cir. 2009)........................................................................ 9

*Mills v. Capital One, N.A.,*
    2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015)......................................... 17

*Mills v. Electric Auto-Lite Co.,*
    396 U.S. 375 (1970)........................................................................... 14, 18

*Milstein v. Werner,*
    57 F.R.D. 515 (S.D.N.Y. 1972) ............................................................ 9, 13

*Plymouth County Retirement Ass'n v. Schroeder,*
    576 F.Supp. 2d 360 (E.D.N.Y. 2008) ........................................................ 15

*Savoie v. Merchants Bank,*
    166 F.3d 456 (2d Cir. 1999)..................................................................... 19

*Schimmel v. Goldman,*
    57 F.R.D. 481 (S.D.N.Y.1973) .................................................................. 8

*Seinfeld v. Barrett,*
    2006 WL 890909 (D. Del. 2006) .............................................................. 15

*Shielcrawt v. Moffett,*
    59 N.Y.S. 2d 619 (Sup. Ct. N.Y. County 1945) ........................................ 8

*Thompson v. Metro Life Ins. Co.,*
    216 F.R.D. 55 (S.D.N.Y. 2003)) ................................................. 11, 16, 22

*Silverstein v. Clarkson,*
    194 Misc. 1046 (N.Y. Sup. Ct. 1949) ...................................................... 13

*Union Carbide Corp. Consumer Products Business Securities Litig.,*
    724 F. Supp. 160 (S.D.N.Y. 1989) .......................................................... 20

*Unite Nat. Ret. Fund v. Watts,*
    No. 04 Civ. 3603 (DMC), 2005 WL 2877899 (D.N.J. Oct. 28, 2005) ....... 17

*United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.,*
    447 F.2d 647 (7th Cir. 1971) ................................................................. 11

*Vides v. Amelio,*
    265 F.Supp. 2d 223 (S.D.N.Y. 2003)....................................................... 15

*Wal-Mart Stores, Inc. v. Visa, U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................... 10, 17

*Wells Fargo & Co. v. United States*,
  2013 WL 2444639 (D. Minn. June 4, 2013) ......................................................... 11

*Williams v. First National Bank*,
  216 U.S. 582 (1910) .................................................................................................. 8

Statutes

I.R.C. § 162(m) ....................................................................................... 6, 7, 12, 14
Securities Exchange Act of 1934, § 14(a), 15 U.S.C. 78n(a) ...................................... 1

Rules

FRCP 23 ................................................................................................................... 16
Rule 14a-9 ............................................................................................................... 14
Rule 23.1 ............................................................................................................. 7, 16

Regulations

17 C.F.R. § 240.14a-101 ............................................................................. 2, 3, 12, 13
17 C.F.R. § 240.14a-9 .................................................................................................. 2

Shiva Stein, on behalf of herself and derivatively on behalf of Flowserve Corporation, a New York corporation, ("Flowserve" or the "Company"), respectfully submits this memorandum of law in support of the motion seeking final approval of the settlement reached by all the parties, and also approval of her attorneys' fees and expenses.

After extensive arm's length negotiations, including the review of confidential internal corporate documents, Plaintiff and Defendants have agreed to settle and dismiss all claims against the Defendants that are based upon, arise out of, or relate to those asserted in this Action in exchange for (1) new board resolutions regarding Flowserve's compensation plans that will cure the alleged defects in these compensation plans and (2) enhanced disclosures that Flowserve will provide to its shareholders for the next three years in its proxy statements regarding these compensation plans.  As described below, the benefits of this settlement will include tax deductions that the Company can now correctly claim, allowing compensation provided under these plans to be tax-deductible going forward.  Plaintiff estimates the tax benefits from this settlement at approximately $4.34 million annually. The terms of the Settlement are set forth in the Stipulation and its accompanying exhibits.

## STATEMENT OF FACTS

Plaintiff, as a shareholder of Flowserve, filed her Complaint (the Complaint) against Defendants in the above-entitled action in this Court (the Action) on April 4, 2016.  Plaintiff brought this action on her own behalf and derivatively on behalf of Flowserve.  The Complaint asserts claims against the Individual Defendants derivatively on behalf of Flowserve, and it asserts direct claims against all Defendants under the Securities Exchange Act of 1934 (the Exchange Act or the Act), § 14(a), 15 U.S.C. 78n(a).

1

The Complaint addresses two kinds of corporate misconduct at Flowserve.  It alleges disclosure violations in the Flowserve 2015 Proxy Statement in contravention of § 14(a) of the Exchange Act and two rules of the United States Securities and Exchange Commission (the SEC) under the Act, (i) 17 C.F.R. § 240.14a-9, the rule prohibiting material misrepresentations and omissions in proxy statements and (ii) 17 C.F.R. § 240.14a-101 (Item 10(a)(1)) (hereinafter "Item 10(a)(1)"), the rule requiring specific disclosures when the board of directors solicits shareholder action on compensation plans.  And it alleges violations of the board's fiduciary duties in the compensation that the board awarded to itself and to corporate officers in 2015 and 2016.  Specifically, the Complaint alleges that the board was awarding compensation from plans that had either not been properly approved by the shareholders or that had expired altogether. The Complaint has two shareholder direct counts and two shareholder derivative counts based on the above.

The Complaint alleges disclosure violations in the 2015 annual meeting proxy statement with respect to three Flowserve compensation plans.  As to the Annual Incentive Plan, a cash-based plan, (the AIP), approved by the shareholders in 2007, the Complaint, ¶ 17, alleges,

> Section 1.1 of the 2007 AIP provided that it was "effective as of January 1, 2007," and that it "shall continue to be effective until December 31, 2011, unless earlier terminated by the Board."

Thus, the Complaint alleges that the AIP expired on December 31, 2011.

As to the Long-Term Incentive Plan, a stock-based plan, (the LTIP), approved by the shareholders also in 2007, the Complaint, ¶ 20, alleges,

> [T]he Long-Term Incentive Plan by its terms requires that all stock-based awards come from and be subject to another plan, the Flowserve Corporation 2004 Stock Compensation Plan (the 2004 Plan).  The 2004 Plan, by its terms, expired on the tenth anniversary of its approval by the shareholders.  That expiration date was June 22, 2014.

Thus, because the 2004 Plan expired on June 22, 2014, the LTIP, which depended on this plan, also expired on that date.

As to the Equity and Incentive Plan (the EICP), a cash and stock-based plan, it required that awards granted under it conform to the AIP, which expired on December 31, 2011, and the LTIP, which in turn requires compliance with the 2004 Plan, which expired on June 22, 2014. Thus, the Complaint alleges that Flowserve had no effective plan from which to pay incentive compensation. The Complaint alleges that the board awarded incentive compensation in 2015 and 2016 from the LTIP and EICP. ¶¶ 23, 25, 26. At the time the Complaint was filed, it was not possible to determine whether such compensation had been awarded for these years under the AIP.

The Complaint also alleges that the board solicited shareholder approval of the EICP in 2009 and reapproval of it in 2015, but that in both years the proxy statements omitted to disclose the classes of EICP participants and the number of participants in each class, thus failing to conform to 17 C.F.R. § 240.14a-101 (Item 10(a)(1)). ¶¶ 13, 14, 24.

Defendants deny the alleged deficiencies in the compensation plans. On May 23, 2016, the Defendants filed with the Court a pre-motion letter seeking dismissal of all claims in the Complaint based on several grounds, including (i) Plaintiff's failure to make a pre-suit demand upon Flowserve's board of directors, (ii) lack of standing, (iii) that there were no actionable misrepresentations or omissions, (iv) that Plaintiff had not suffered any economic loss, and (v) Plaintiff's claims were time-barred. On May 26, 2016, Plaintiff filed her opposition to Defendants' pre-motion letter arguing that none of Defendants' arguments supported dismissal. A hearing on Defendants' pre-motion letter was initially scheduled for June 15, 2016.

Around this time, the parties began negotiations in an effort to resolve the Action by settlement.  Following further negotiations, two adjournments of the pre-motion hearing, and an exchange of documents and information, on or about August 17, 2016, the parties reached an agreement in principle to settle the Action as discussed below.

The terms of the settlement require Flowserve and the Individual Defendants, acting as the board of directors, to pass the following resolutions and provide the following disclosures to Flowserve's shareholders:

Resolutions: The Individual Defendants, acting as Flowserve's board of directors, will pass resolutions regarding the AIP, the LTIP, and the EICP to approve, clarify, confirm, and ratify that the AIP and the LTIP are two compensation plans that are adopted under, and have the same expiration date as, the EICP, but which are maintained separate from the EICP and pursuant to which Annual Incentive Awards and Long-Term Incentive Awards (as each such term is defined in the EICP) may be made under and pursuant to the terms of the EICP.

Enhanced Disclosures: All Defendants agree that in the 2017, 2018, and 2019 annual meeting proxy statements the compensation discussion and analysis will contain the following disclosures:

(a)     Within the "Elements of the Executive Compensation Program – Overview" subsection of the CD&A:

The Flowserve Corporation Equity and Incentive Compensation Plan (EICP) is our shareholder-approved equity and cash compensation plan that allows Flowserve to provide equity compensation in compliance with any applicable shareholder-approval requirements of the New York Stock Exchange. In addition, the shareholder-approved performance criteria in the EICP allow us to provide equity and cash compensation that may be tax-deductible under IRC 162(m) to our Named Executive Officers.

In 2009, shareholders approved the EICP, and the Company reserved 8,700,000 shares of common stock (as adjusted for the Company's three-for-one

forward stock split effected on June 21, 2013) for distribution.  In 2015, shareholders re-approved the performance criteria under the EICP to allow Flowserve to continue to provide compensation that may be tax-deductible for purposes of Section 162(m) of the IRC.

The Annual Incentive Plan (AIP) and the Long-Term Incentive Plan (LTIP) are two Board-approved Flowserve compensation plans that are adopted under, and have the same expiration date as, the EICP, but which are maintained separate from the EICP.  Awards granted under the AIP and LTIP that are intended to comply with the requirements of IRC 162(m) must use one or more of the EICP's shareholder-approved performance criteria, and are dependent on fulfilling such performance criteria.  In addition, equity awards provided under the LTIP are subject to the limitations of the EICP including the 8,700,000 shares of common stock that are reserved for distribution under the EICP.  The Board most recently reviewed and approved the AIP and the LTIP on [_____ __, 20__].

(b)     In the "Tax and Accounting Implications of Executive Compensation" subsection of the CD&A:

The AIP and the LTIP were adopted under, and have the same expiration date as, the EICP, which was most recently approved by shareholders for Section 162(m) purposes at the 2015 annual meeting of shareholders. Performance-based compensation under both the AIP and the LTIP that is subject to the requirements of IRC 162(m) is expected to be deductible for tax purposes because such compensation is dependent on fulfilling performance criteria approved by shareholders under the EICP.

(c)     For all proxy statements proposing to reapprove or amend the EICP or approve a substantially similar substitute plan, the proposal shall disclose, to the extent such disclosure below, in the reasonable view of management, remains relevant to such plan, as follows:

The Flowserve Corporation Equity and Incentive Compensation Plan (EICP) [or substitute plan] is our shareholder-approved equity and cash compensation plan that allows Flowserve to provide equity compensation in compliance with any applicable shareholder-approval requirements of the New York Stock Exchange.  In addition, the shareholder-approved performance criteria in the EICP allow us to provide equity and cash compensation that may be tax-deductible under IRC 162(m) to our Named Executive Officers. Flowserve maintains two Board-approved plans – the Annual Incentive Plan (AIP) and the Long-Term Incentive Plan (LTIP) – that are adopted under, and have the same expiration date as, the EICP [or substitute plan].  Awards granted under the AIP

5

and LTIP that are intended to comply with the requirements of IRC 162(m) must use one or more of the EICP's [or substitute plan's] shareholder-approved performance criteria, and are dependent on fulfilling such performance criteria. In addition, equity awards provided under the LTIP are subject to the limitations of the EICP [or substitute plan].

As of the [record date], approximately [____] employees and [__] directors were eligible for awards under the EICP [or substitute plan].

As noted above, this settlement contemplates that these disclosures will first be included in the Flowserve proxy statement for the 2017 annual meeting, which will likely be furnished in April 2017.

Plaintiff submits that the Resolutions in this proposed settlement will achieve the benefit that Flowserve will pay all its incentive compensation from effective compensation plans. As a result of having effective plans, the incentive compensation to the Named Executive Officers, identified in the Complaint, ¶ 15, will be tax-deductible under I.R.C. § 162(m), which requires stockholder approved compensation plans for such tax deductions. The financial benefits of those tax deductions will be correctly accounted for as assets by Flowserve, and the stock paid out will be correctly listed on the New York Stock Exchange. Plaintiff also submits that the Enhanced Disclosures in this proposed settlement will provide Flowserve's shareholders with the benefit of accurate information concerning Flowserve's executive compensation and will provide information specifically required by the SEC when the board solicits shareholder re-approval of the EICP or approval of a substantially similar plan.

It is possible to quantify the tax benefit here. According to calculations Plaintiff has performed based on Flowserve's disclosures in its 2015 and 2016 proxy statements, Flowserve deducted an average of $12,694,100[1] in 2014 and 2015 in tax-deductible compensation to the

---

[1] For calculations explaining this number, please see the explanation attached as Exhibit ("Exh."). 5. All references to "Exhs." herein are attached to the Declaration of A. Arnold Gershon filed contemporaneously with this memorandum.

Named Executive Officers under the EICP for these years.  For reasons explained herein, Plaintiff asserts that without this settlement, Flowserve would not have any effective plans from which to grant such compensation going forward, and as a result, such compensation going forward would not satisfy the requirements of I.R.C. § 162(m), meaning such compensation would not be tax-deductible.  Based on this estimate of the amount of tax-deductible compensation Flowserve has claimed as result of I.R.C. § 162(m) – $12,694,100– with the applicable 35% corporate tax rate, there is a tax benefit of approximately $4.34 million per year.

In addition, this Settlement will confer substantial non-monetary benefits on Flowserve and its shareholders.  The Company has agreed to materially increase the transparency, completeness and accuracy of executive compensation disclosures concerning the EICP, AIP and LTIP.  These disclosures will enable shareholders to understand how these plans interact with one another, and how compensation is awarded under them.  Such disclosures will enable shareholders to have a full picture of how and why Flowserve awards certain compensation to participants in these plans.  Although such benefits are difficult to quantify, they nonetheless provide meritorious bases for approving this Settlement.

Based on the benefits of the proposed settlement and pursuant to Article 6 of the Stipulation, Plaintiff's counsel hereby applies to the Court for an award of fees and expenses of $560,000.

## ARGUMENT

## I.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23.1(c) requires judicial approval for any settlement or compromise of derivative claims.  This Court has long acknowledged that "'[b]ecause shareholder derivative actions are notoriously difficult and unpredictable, settlements are favored.'"  *In re Fab Universal Corp. Sh.*

*Deriv. Litig.*, 148 F. Supp. 3d 277, 281 (S.D.N.Y. 2015) (citation omitted); *Mathes v. Roberts*, 85 F.R.D. 710, 713 (S.D.N.Y. 1980) (same) (quoting *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y.1973)).   Indeed, courts have long favored the settlement of all disputed claims, *Williams v. First National Bank*, 216 U.S. 582, 595 (1910), a principle especially applied in complex cases.   *In re WorldCom, Inc. Sec. Lit.*, 2005 WL 591189, at *5 (S.D.N.Y. March 14, 2005) (strong interest in settlement of complex cases).

In reviewing a proposed settlement, courts do not rewrite the agreement or attempt to resolve issues that are left undecided as a result of the settlement.   *In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d. Cir. 1986).   Although the courts must give careful attention to the settlement, a settlement is not a trial.   The court should "not decide the merits of the case or resolve unsettled legal questions."   *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1997).   While the court must "undertake an analysis of the facts and the law relevant to the proposed compromise, … the trial judge ought not try the case in the settlement hearings."   *Cotton*, 559 F.2d at 1330.   As Justice Bernard Botein held, in *Shielcrawt v. Moffett*, 59 N.Y.S. 2d 619, 621 (Sup. Ct. N.Y. County 1945):

> In weighing the benefits held forth by the agreement of settlement against benefits dependent on the likelihood of recovery upon the plaintiffs' cause of action, the courts cannot be expected to balance the scales with the nicety of an apothecary. The very object of a compromise "is to avoid the determination of sharply contested and dubious issues."

(Citation omitted.); *see also Greenspan v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974) (purpose of settlement is to avoid a trial).

The standards for determining whether a proposed settlement of a stockholder's derivative or class action should be approved are well-established.   In reviewing a proposed

settlement, the court must find that the settlement is fair, reasonable, and adequate.  *See*, *e.g.*, *Milstein v. Werner*, 57 F.R.D. 515, 518-524 (S.D.N.Y. 1972) (approving derivative action settlement that amended a corporation's stock purchase plan because it provided "demonstrable benefit[s], both present and future, to the corporation," and it was "arrived at in good faith, represents the exercise of reasonable business judgment, and is fair, reasonable and adequate").

The Second Circuit has explained that in determining whether a proposed settlement is fair, reasonable and adequate, it considers the negotiating process leading up to the settlement to determine the procedural fairness, as well as the substantive fairness, of the proposed settlement. *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009).

### A.    The Proposed Settlement Is Procedurally Fair because It Is the Result of Good Faith, Arm's Length Negotiations

A presumption of fairness applies to a proposed settlement that is the result of arm's length negotiations between counsel knowledgeable in complex derivative litigation. *McReynolds*, 588 F.3d at 803 (settlement enjoys "presumption of correctness" when it is product of "'arm's length negotiations conducted by experienced, capable counsel'") (citation omitted); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (same).  Here, the Settlement is the product of rigorous arm's length negotiations over a span of three months. *Fielding v. Allen*, 99 F. Supp. 137, 144 (S.D.N.Y. 1951) (recommendation of counsel who litigated derivative action is "entitled to considerable weight").  Here, the parties and their counsel were well-informed of the issues in the Action, and were further experienced in complex securities litigation and shareholder derivative litigation).

The Settlement was reached only after the Court scheduled a pre-motion conference on Defendants' prospective motion to dismiss, which required the parties' extensive research on the issues that would be addressed on that motion and the persuasive argument of their positions

with regard to these issues in a way that allowed both sides to understand fully the uncertainties and risks of continued litigation, especially when compared to a potentially mutually beneficial settlement of this case.  This settlement was also reached based on Plaintiff's review of corporate confidential internal documents provided by the Defendants concerning the compensation plans at issue in this litigation and the payment of incentive compensation.

### B.    The Proposed Settlement Is Substantively Fair, As It Falls within the Range of Reasonableness and Merits Final Approval

The principal factors in evaluating the substantive fairness of a proposed settlement in the Second Circuit are well-settled:

> (1) the complexity, expense and likely duration of the litigation:  (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart Stores, Inc. v. Visa, U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  *Wal-mart* and *Grinnell* were class actions, not shareholders' derivative actions, but some of these factors have been applied by this Court to the settlements of derivative actions.  This Court held in *In re AOL Time Warner Sh. Deriv. Lit.*, 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006),

> In the context of shareholder derivative litigation, several of the factors enunciated in *Grinnell* inform the Court's evaluation of whether a settlement is fair, reasonable, and adequate: (1) the reasonableness of the benefits achieved by the settlement in light of the potential recovery at trial: (2) the likelihood of success in light of the risks posed by continued litigation; (3) the likely duration and cost of continued litigation; and (4) any shareholder objections to the proposed settlement.

(Citations omitted.)

In evaluating substantive fairness, "not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Lit.*, 225 F.R.D. at 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metro Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)).   In the present case, consideration of the relevant factors strongly supports final approval of the proposed Settlement.   It is an excellent and immediate result for Flowserve and its shareholders.

1.       **The Benefits of This Settlement Are Excellent In Light of the Potential Recovery at Trial, the Risks Posed by Continued Litigation and the Likely Duration and Cost of Continued Litigation**

The first relevant *Grinnell* factor here, "the reasonableness of the benefits achieved by the settlement in light of the potential recovery at trial," counsels in favors of approval of the Settlement.   *In re AOL Time Warner*, 2006 WL 2572114, at *3.   The Settlement provides a substantial benefit to Plaintiff, Flowserve and its shareholders, and is in their best interest because it provides nearly all of the relief that the Action could likely achieve.   It renews and ratifies the compensation plans that had allegedly expired, and it provides material information to shareholders for them to understand how these plans interact with each other and what limitations the plans put on the board of directors in terms of the awarding of compensation to directors and employees of Flowserve.   This settlement will also ensure that such compensation will be tax-deductible in the future and that the tax deductions will be correctly accountable as assets under generally accepted accounting principles.   *Wells Fargo & Co. v. United States*, 2013 WL 2444639 at *5-7 (D. Minn. June 4, 2013) (discussing Financial Accounting Standards Board's interpretation FIN 48 on accounting for income taxes).   And it will forestall future problems concerning these plans.   *See United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*, 447 F.2d 647, 656 (7th Cir. 1971) (holding that the parties' effort to "forestall most of the

bad turns" that "might conceivably take place in the future" weighed "in favor of the settlement"); *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302, 2006 WL 2572114, at *4 (S.D.N.Y. Sept. 6, 2006) ("[t]he governance and compliance provisions memorialized in the Settlement directly address the failure of internal controls that precipitated the instant lawsuits.  The preventive aspect of these provisions is itself a significant benefit of the Settlement").

To explain why this Settlement will ensure that Flowserve's compensation will be tax-deductible in the future, Plaintiff submits the following: I.R.C. § 162(m) provides that for a publicly-held corporation, no deduction shall be allowed for compensation in excess of $1,000,000 to any Named Executive Officer for the taxable year.  There is an exception to this limit under I.R.C. § 162(m) if such compensation in excess of $1,000,000 is paid based on the Named Executive Officer's achievement of targets set with regard to objective performance goals are approved by a majority vote of the shareholders.  I.R.C. § 162(m)(4)(C)(ii).  Typically, such shareholder approval is accomplished by requesting that shareholders approve a compensation plan containing such objective performance goals.  It is Plaintiff's position that if the shareholders approve an incentive compensation plan with performance goals, but the plan expires by its own terms – as was the case with the LTIP and AIP (and the EICP which depended on these two expired plans – the shareholder's approval of those performance goals also expires, meaning the plan can no longer provides tax-deductible compensation under I.R.C. § 162(m).

Thus, because this Settlement renews and ratifies the compensation plans that had allegedly expired, and because it provides for the information required by 17 C.F.R. § 240.14a-101 (Item 10(a)(1)) to be delivered to stockholders going forward, this Settlement ensures that tax-deductions the Company will claim based on I.R.C. § 162(m) will be proper.  According to

calculations Plaintiff has performed based on Flowserve's disclosures in its 2015 and 2016 proxy statements, Flowserve deducted an average of $12,694,100[2] in 2014 and 2015 in tax-deductible compensation under the EICP for these years.   Based on this estimate of the amount of tax-deductible compensation Flowserve has claimed as result of I.R.C. § 162(m), with the applicable 35% corporate tax rate, I.R.C. § 11(b)(1)(D), there is a tax benefit of approximately $4.34 million per year going forward.  This Settlement ensures that such tax benefits will continue for the next three years at minimum.  Thus, this Settlement confers a minimum benefit of approximately $13 million.  Such future quantifiable benefits counsel in favor of approval.  *See Milstein v. Werner*, 57 F.R.D. 515, 522, 525 (S.D.N.Y. 1972) (holding that "[t]here is no question but that the settlement inures to the benefit of the corporation" where a stock purchase plan was adjusted such that it was estimated that the Company would receive an additional consideration of at least of $3,297,600 going forward); *see also Silverstein v. Clarkson*, 194 Misc. 1046, 1049, 1051 (N.Y. Sup. Ct. 1949) (settlement based on amended employment contract that would reduce employee's compensation by $1.75 million over the next seven years); *Goodman v. Futrovsky*, 213 A.2d 899, 903 (Del. 1965) (calculating $1 million in future savings based on restrictions set by settlement and approving settlement on the basis of such benefits).

In addition, this Settlement will confer substantial non-monetary benefits on Flowserve and its shareholders.  The Company has agreed to materially increase the transparency, completeness and accuracy of executive compensation disclosures concerning the EICP, AIP and LTIP including the language necessary to satisfy 17 C.F.R. § 240.14a-101 (Item 10(a)(1)) going forward.  These disclosures will enable shareholders to understand how these plans interact with

---

[2] For calculations explaining this number, please see the explanation attached as Exh. 5.

one another, and how compensation is awarded under them.  Such disclosures will enable

shareholders to have a full picture of how and why Flowserve awards certain compensation to

participants in these plans.  Although such benefits are difficult to quantify, they nonetheless

provide meritorious bases for approving this Settlement.  *Mills v. Electric Auto-Lite Co.*, 396

U.S. 375, 395 (1970) ("In many suits under § 14(a)… it may be impossible to assign monetary

value to the benefit.  Nevertheless, the stress placed by Congress on the importance of fair and

informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy,

petitioners have rendered a substantial service to the corporation and its shareholders….  But

regardless of the relief granted, private stockholders' actions of this sort 'involve corporate

therapeutics,' and furnish a benefit to all shareholders by providing an important means of

enforcement of the proxy statute") (citations omitted).

    The benefits of this Settlement are excellent compared to "the potential recovery at trial,"

"the likelihood of success in light of the risks posed by continued litigation," and "the likely

duration and cost of continued litigation."  *In re AOL Time Warner*, 2006 WL 2572114, at *3.

Among the problematic issues confronting a recovery are whether the AIP, the LTIP, and the

2004 Plan had actually expired or were effectively extended by the EICP and other actions of the

Flowserve board.  Another issue is whether Defendants complied with Item 10(a)(1) in soliciting

shareholder approval of the EICP.  Additional issues are whether Defendants' in fact complied

with SEC Rule 14a-9 and I.R.C. § 162(m) despite the expiration of the Flowserve compensation

plans, an issue that has never been litigated in any court.

    In addition to these defenses, shareholders' derivative litigation raises certain procedural

hurdles and risks for shareholders not found in either class or securities litigation, including, *inter*

*alia*, the requirement to make a demand on the board of directors before proceeding to file a

complaint or face heightened pleading requirements to demonstrate why such demand should be excused.  *See Marx v. Akers*, 88 N.Y.2d 189 (1996) (setting New York demand futility standard for derivative actions).  Further, Plaintiff would have to "rebut the presumptions of the business judgment rule."  *In re Omnicom Group, Inc. Sh. Deriv. Lit.*, 43 A.D. 3d 766, 768 (N.Y.A.D. 1st Dept. 2007).

In negotiating the proposed Settlement, Plaintiff's counsel, while strongly believing they had powerful arguments to overcome these hurdles, *Plymouth County Retirement Ass'n v. Schroeder*, 576 F. Supp. 2d 360 (E.D.N.Y. 2008) (overcoming pre-suit demand requirement in false proxy statement context); *Seinfeld v. Barrett*, 2006 WL 890909 (D. Del. 2006) (same); *Vides v. Amelio*, 265 F.Supp. 2d 223 (S.D.N.Y. 2003) (same), was nonetheless fully aware of the material risks posed by the pre-suit demand requirement, *Bader v. Blankfein*, 356 Fed. Appx. 471, 473 (2d Cir. 2009) (declining to adopt a bright line rule for demand futility in false proxy statement context), particularly when weighed against the immediate and tangible benefits conferred upon the Flowserve and its shareholders.

The further prosecution of the litigation would require plaintiff to conduct substantial additional complex and time-consuming discovery on a range of issues including, for example, whether the 2015 proxy statement fully and accurately described the methodology for awarding incentive compensation, and its tax consequences.  Further, a trial would force Plaintiff and Defendants' counsel to spend a significant amount of attorney and expert time, not only during the trial itself but also in preparation for a trial because, for example, there would be contested pre-trial motions.  The resolution of these motions and the trial would consume valuable judicial resources as well.

Finally, even assuming that Plaintiff prevailed at trial, it is likely that Defendants would file post-trial motions and appeals, thereby increasing the costs and duration of this litigation and further delaying relief to the Company.   In contrast, the proposed Settlement provides an immediate benefit to the Company and its shareholders without "the risks, complexity, duration, and expense of continuing litigation."  *Global Crossing*, 225 F.R.D. at 456-457.   Therefore, the proposed Settlement merits the final approval of this Court.

## 2.    Reaction of the Shareholders to the Settlement

The final relevant *Grinnell* factor, whether there have been any "shareholder objections to the proposed settlement," *In re AOL Time Warner*, 2006 WL 2572114, at *3, also supports the Settlement here.

As provided in the Preliminary Approval Order, on December 8, 2016, Flowserve notified its shareholders of the Settlement by (a) posting this Stipulation and the Notice on Flowserve's website; and (b) publishing the Summary Notice over the national newswire service, PR Newswire.[3]   Courts routinely order notice through publication alone for derivative suits. *Arace v. Thompson*, No. 08 Civ. 7905 (DC), 2011 WL 3627716, at *4 (S.D.N.Y. Aug. 17, 2011) ("In a derivative action, a court may determine that notice of a proposed settlement by publication is appropriate under the circumstances").

Published notice and website posting have gained broad acceptance in light of the rapid transition of the investment community from a paper-based to a web-based disclosure system. Indeed, this notice program has been widely used in similar shareholder derivative settlements and approved by numerous courts as comporting with due process and Rule 23.1.  *See Benoit v.*

---

[3] The notification requirement under Rule 23.1 is less rigorous than the class action notice requirements of Rule 23. Notification is adequate under Rule 23.1 so long as it is "in the manner that the court orders."  *Compare* Fed. R. Civ. P. 23.1(c) *with* Fed. R. Civ. P. 23(c)(2)(B) (requiring the "best notice that is practicable" and requiring notice to all individual class "members who can be identified through reasonable effort").

*Hammonds*, No. 07 Civ. 561 (GMS), (Scheduling Order in Connection with Derivative Settlement, dated Aug. 13, 2009), D. Del., D.I. 48 at 4 (publication twice on a National Wire Service sufficient); *Unite Nat. Ret. Fund v. Watts*, No. 04 Civ. 3603 (DMC), 2005 WL 2877899, at *3 (D.N.J. Oct. 28, 2005) (publication by newspaper sufficient); *Klein ex rel. SICOR, Inc. v. Salvi*, No. 02 Civ. 1862 (AKH), 2004 WL 596109, at *1 (S.D.N.Y. Mar. 30, 2004), *aff'd sub nom. Klein v. Salvi*, 115 F. App'x 515 (2d Cir. 2004) (publication by newspaper and company website sufficient).

The reaction of the shareholders to the settlement here counsels in favor of approval of the Settlement.  A court will generally conclude that a small number of objections weigh in favor of approving the settlement.  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-7 (2d Cir. 2001).  As of the date of this filing, Plaintiff has not received any objections to the Settlement and no one has filed an objection with the Court.  Therefore, this factor weighs in favor of the Court approving the proposed Settlement.

### 3.    The Parties Have Sufficient Information to Agree to this Settlement

Although not considered an essential *Grinnell* factor for evaluating a proposed derivative action settlement, *In re AOL Time Warner*, 2006 WL 2572114, at *3, Plaintiff will also address "the stage of the proceedings and the amount of discovery completed," *Wal-Mart Stores*, 396 F.3d at 117, because the parties began discussing settlement at an early stage and signed a Memorandum of Understanding less than five months after filing the Complaint.

This Court encourages the early settlement of complex securities actions because it accelerates the recovery to the shareholders and conserves judicial resources.  *Mills v. Capital One, N.A.*, 2015 WL 5730008 at *4 (S.D.N.Y. Sept. 30, 2015).  The point addressed by this third *Grinnell* factor is whether the parties have "enough information to agree on a reasonable

settlement." *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211 (LTS), 2011 WL 2208614 (S.D.N.Y. June 7, 2011).  Formal discovery is not required at all for an adequate settlement "if the parties obtained sufficient information to understand the claims and negotiate settlement terms." *Id.*

That was the situation at bar.  Here, Plaintiff's counsel investigated the facts and researched the law for three months before filing the Complaint.  After filing Defendants were immediately forthcoming with facts and documents to support their defenses.  The Parties' pre-motion conference letters explored the legal issues in the case, and put both Parties on notice of the likely risks of continued litigation.  As shown herein, this proposed Settlement cures the problems alleged in the Complaint and prevents their reoccurrence.

## II.   PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE

Plaintiff's counsel seeks an award of attorneys' fees of $560,000, including out-of-pocket expenses aggregating $8,371.03 for services expended on a fully contingent basis.  Pursuant to article 6 of the Stipulation of Settlement, the Company has agreed to pay this amount.  Plaintiff submits that her application is fair and reasonable given the legal and factual issues and litigation risks described above, the efforts expended by her counsel, and the material benefits that Plaintiff's efforts have created by the settlement of this litigation.

In a stockholder's derivative action, plaintiff's counsel may recover attorneys' fees. *Kaplan v. Rand*, 192 F.3d 60, 69 (2d Cir. 1999) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970)).  An award of attorneys' fees is justified where the stockholder derivative action results in a substantial benefit to the company – even where it is "impossible to assign monetary value to the benefit." *Mills*, 396 U.S. at 395.  The *Mills* Court defined "substantial benefit" as "something more than technical in its consequences and . . . one that accomplishes a

18

result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." *Id.* (quoting *Bosch v. Meeker Coop. Light & Power Ass'n*, 257 Minn. 362, 366-67, 101 N.W. 423 (1960)).  This proposed settlement provides substantial benefits that are both monetary and non-monetary.

The amount of the award for attorneys' fees is committed to the sound discretion of the trial court.  *See In re Merrill Lynch & Co., Inc. Research Reports Securities Litig.*, 2007 WL 313474 *12 (S.D.N.Y. Feb. 1, 2007) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)).  Courts have used two basic methods to decide the amount of attorneys' fees.  In this Circuit a district court has the freedom to use either the "lodestar" method, or the "percentage of the fund" method.  *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 49-50 (2d Cir. 2000).  The lodestar analysis involves multiplying the number of hours the attorneys worked on the case by a reasonable hourly billing rate.  *In re Merrill Lynch*, 2007 WL 313474 at *12.  The product may be adjusted by applying a multiplier for factors such as the risk of the litigation, the performance of counsel, or the success achieved.  *Id.* (citing *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 84-85 (E.D.N.Y. 2003)).  Under the percentage of recovery method the fee is simpler, based on "some percentage of the fund created for the benefit of the class."  *Id.* (quoting *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999)).  The following is the traditional criteria in determining a fee, no matter which method is to be used: "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'"  *Goldberger*, 209 F.3d at 50

(quoting *Union Carbide Corp. Consumer Products Business Securities Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).  Plaintiff's counsel's request of fees is reasonable under both methods.

## A.     The Request for Fees Is Reasonable under the Percentage of Recovery Method

In the Second Circuit a district court may apply the percentage of recovery method in awarding attorneys' fees.  *Goldberger*, 209 F.3d at 50.  The first *Goldberger* factor evaluates the time and labor expended in the litigation.  Considerable time and effort were expended in this case by both Parties' counsel.  A total of 388.5 hours were spent by Plaintiff's counsel.  *See* Exh. 4.

The second *Goldberger* factor evaluates the magnitude and complexities of the litigation.  As discussed thoroughly above, the litigation at bar involved intricate legal and factual issues in dispute and absorbed extensive labor in connection with crafting the Complaint, constructing persuasive arguments with regard to the pre-motion letters, and putting together a highly-beneficial settlement.  Such complex legal issues included alleged violations of the federal securities law and New York corporation law, and the Settlement of this involves a complicated analysis of the Internal Revenue Code.  Resolution of these legal issues at trial would no doubt result in the depositions of numerous individuals and the expenditure of an extraordinary amount of additional legal resources.

The third *Goldberger* factor, the risk of litigation, is "perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees."  *Merrill Lynch*, 2007 WL 313474 at *16.  The case at bar deals with unsettled areas of law and elevates the risk of non-recovery due to the difficulties of pleading.  As thoroughly discussed above, there remain large obstacles to a successful litigation of this action especially in light of the benefits contemplated by this Settlement.

To evaluate the fourth *Goldberger* factor, the quality of representation, "courts review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit."  *Merrill Lynch*, 2007 WL 313474 at *19.  Given the difficulty and the complexity of the present litigation, counsel from both sides have proven to have conducted this litigation with great skill and tenacity.  Plaintiff is represented by Barrack, Rodos & Bacine, a firm with extraordinary experience in the field of complex securities actions. *See* Exh. 6 (firm biography). Defendants are represented by Skadden, Arps, Slate, Meagher & Flom, one of the finest law firms in the United States.  Thus, the Court should find that the quality of representation weighs in favor of the award.

The fifth *Goldberger* factor looks into the requested fee in relation to the settlement. Here, the disclosure benefit to the Company and its shareholders is substantial.  As discussed above, Plaintiff calculates the tax benefits of this settlement at $4.34 million annually. Even if these benefits only last for the next three years during which time Flowserve has affirmatively agree to continue to perform the terms of this Settlement, the benefit here would be approximately $13 million.  The requested fee of $560,000, less expenses of $8,371.03, or $551,629, equals 4.2% of the recovery, which is more than reasonable in this case.  *See In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 343-44 (S.D.N.Y. 2011) (citing numerous cases to hold that 25-30% of the common benefit is reasonable in this district).  In addition, although difficult to quantify, the enhanced disclosures contemplated by this Settlement will benefit shareholders in terms of the transparency, completeness and accessibility of executive compensation disclosure.  *Mills*, 396 U.S. at 395.

The last *Goldberger* factor, public policy, also favors the award requested here.  "In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who

defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." *In re Worldcom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005); *see also Bansbach v. Zinn*, 1 N.Y.3d 1, 8, 801 N.E.2d 395 (2003) ("derivative actions serve the important purpose of protecting corporations and minority shareholders against officers and directors who, in discharging their official responsibilities, place other interests ahead of those of the corporation"). The reasonableness of the requested fee here promotes public policy by encouraging this type of litigation and appropriately compensating counsel for their skill and labor.

**B.    The Request for Fees Is Reasonable under the Lodestar Method**

The court often cross-checks the percentage of recovery against the lodestar method. *Merrill Lynch*, 2007 WL 317474, at *22. "[T]he hours documented by counsel need not be exhaustively scrutinized by the district court." *Id.* A multiplier is typically applied to the lodestar, representing, *inter alia*, the risk of litigation, complexity of the issues, and contingent nature of the representation, and the skills of the attorneys. *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 467-68. The Plaintiff's counsel's lodestar is $275,302.50 and the weighted average hourly rate is $709/hr. *See* Exh. 4. Based on the lodestar and the hourly rates, less expenses, there is a multiplier of approximately 2.0. In *In re Fab Universal Corp. S'holders. Litig.*, 148 F. Supp. 3d at 283, the court held that a multiplier in the range of 3 to 5 is common. The multiplier in this case is far less than that range. Thus, we respectfully submit that the requested fees are appropriate under the lodestar method.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court finally approve the Settlement and award attorneys' fees and litigation expenses to Plaintiff's Counsel in the amount of $560,000.

Dated: New York, New York
          January12, 2017

**BARRACK, RODOS & BACINE**

By: __/s/ A. Arnold Gershon_____
A. Arnold Gershon
Michael A. Toomey
Eleven Times Square
640 Eighth Avenue, 10th Floor
New York, NY 10036
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

Daniel E. Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Fax: (215) 963-0838

*Attorneys for Plaintiff*

23